[No. 37403.    Department One.    September 23, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR
JAMES GERSVOLD, *Appellant*.*

*Samuel P. Hale*, for appellant.

*Robert E. Schillberg*, for respondent.

HALE, J.—About 3 in the morning, June 8, 1963, the
Edmonds police department summoned George Stewart,
pharmacist and owner of Stewart's Pharmacy in Edmonds,
to his store by telephone. Hurrying there, he found that
the padlocked back door had been forced open and its
frame broken. A careful inventory showed a quantity of
drugs known as amphetamines, having such trade names
as Dexamyl, Dexedrine, Numorphan and Desoxyn were
missing, along with some Percodan, a narcotic. None of the

*Reported in 406 P.2d 318.

stolen drugs could lawfully be sold at retail except on prescription.

By amended information, the prosecuting attorney for Snohomish County charged Arthur James Gersvold, appellant here, and Herbert Marshall Stewart[1] in count 1 with burglary in the second degree for breaking and entering the pharmacy, and Gersvold alone in count 2 with grand larceny in stealing the drugs therefrom. Gersvold went to trial before a jury, and was found guilty on both counts. From a judgment and sentence imposing 15 years' imprisonment concurrently on each count, he appeals, making two assignments of error.

In passing directly to the assignments of error, we observe that the evidence abundantly supports the verdict and that this appeal depends solely on the admissibility of several items of evidence.

The first assignment of error, urging that certain exhibits were insufficiently identified to constitute material evidence, challenges the admissibility of exhibit 6—a brown Kraft paper bag similar to the kind used in grocery stores; exhibit 10—a glass drug bottle labeled "Dexamyl Spansule No. 1" containing medical tablets; exhibit 17—a glass drug bottle labeled "Desoxyn" containing medical tablets; exhibit 20—a glass drug bottle labeled "Dexamyl" containing medical tablets; exhibit 22—a drug bottle labeled "Dexedrine Sulfate" containing medical tablets; and exhibit 27 —a silverplate tablespoon imprinted "Wallace XXXX."

Referring to all of the exhibits except No. 6, the brown paper bag, and No. 27, the silverplate spoon, Mr. Stewart, the pharmacist, enumerated by name, number of tablets and weight in milligrams, the 16 kinds of missing drugs and said they had a wholesale value of $103.62 and retail value of between $160 and $175. On the witness stand he examined all of the drug bottles included in the first assignment of error and in substance said they were of the same type, name, kind, quality, appearance and label

---

[1]Not related to nor identified with George Stewart, owner of the pharmacy.

as those taken from his drug store. He said that it was his practice to mark a large "X" with a blue ink ball-point pen across the face of the label on opening the bottle for the first time to indicate that it had been opened and dispensed from. Three of the exhibits had a similar "X" on the label. Typical of his testimony is:

Q. Now, on Exhibit "17", would you examine that? Does that bear a mark similar to the "X" you testified to? A. Yes, that's our "X". That's like we have on our open bottles. When we take a tablet out, we mark it with an "X".

Exhibit 10, labeled Dexamyl Spansule No. 1—although having no "X" mark—was admitted because that bottle held the identical number of capsules as one of the stolen bottles of Dexamyl Spansule No. 1. The other drug bottles contained the same or a lesser number of tablets than the stolen bottles; none contained more.

Police officers testified that these drugs and the brown Kraft paper bag had been seized in a search of Herbert Marshall Stewart's premises where about three dozen bottles of narcotics and amphetamines were found. Other evidence linked defendant Gersvold to the exhibits by showing his automobile at the scene of the burglary, his making a telephone call from a public telephone booth closely proximate in time and distance to the burglary, and his driving the car and defendant Stewart to and from the burglary. The officers identified exhibit 6, the brown paper bag, by saying that they had placed the seized drugs in it at the search and marked it with identifying symbols for study by laboratory experts.

As to exhibit 27—the tablespoon found in a search of the residence where defendant lived—a chemist testified that it contained a residue of melted amphetamines, and the officers said defendant told them that he had used the spoon to melt down amphetamines in making more concentrated solutions for injection.

Were these exhibits material to any true issue? Evidence, if competent and relevant, is said to be material when it logically tends to prove or disprove a fact in issue.

To be admissible as material evidence, it must explain, demonstrate or have a tendency to establish or disestablish the fact with which it is sought to be connected. Materiality, therefore, should be judged not only on what the evidence shows standing separately but also from whatever inferences may sensibly be drawn therefrom when it is viewed in connection with other evidence. Any competent evidence, then, tending logically to prove the commission of a crime or the defendant's connection with it is deemed material to the prosecutor's case.

> Any evidence tending to identify the accused as the guilty person is relevant and competent. It need not be in itself sufficient to support a conviction in order to be admissible; it is enough, if it has a tendency to that effect. Nor need the evidence be so far positive as to leave nothing but the credibility of the witnesses to be considered. Uncertainty in this respect affects only the weight of the evidence, not its admissibility . . . .

*State v. Spadoni*, 137 Wash. 684, 243 Pac. 854 (1926).

That the challenged evidence alone proves neither the connecting link in a chain of circumstances nor the ultimate fact in issue does not make it immaterial; materiality depends on whether evidence tends to link up other evidence or prove an ultimate fact in issue. 20 Am. Jur. *Evidence* §§ 251, 252.

Evidence thus material to any issue, if under no excluding disability, is admissible. Its cogency and the degree to which it elucidates the facts in issue become then a matter of the weight to be given it by the trier of the facts. All of the items challenged by the first assignment of error in the instant case met these tests and were properly admitted under the decisions of this court.

In *State v. Spadoni*, 137 Wash. 684, 243 Pac. 854 (1926), where two revolvers were found near a path close to the scene of a shooting, neither could be positively identified as the lethal weapon nor placed in defendant's possession. Evidence was admitted concerning one of the revolvers that the accused had earlier attempted to sell or trade a pistol of the same manufacture and caliber. Although it

was not claimed that either of the weapons found near the path was the identical weapon sought to be sold, we upheld admission of the revolver offered for sale, saying:

Always, the real question is, whether the matter shown has such a connection with the crime for which the accused is being tried as to tend to show that the accused committed that crime. Here, there was this connection. The revolvers were properly admitted in evidence as tending to elucidate and make more definite the oral evidence. More than this, they tended directly to connect the accused with the crime for which he was on trial.

We affirmed this holding later in *State v. Duree*, 52 Wn.2d 324, 324 P.2d 1074 (1958).

In the instant case, the drug bottles, labels and contents tended to prove commission of the burglary and larceny and established a basis for showing the value of the items stolen. The brown Kraft paper bag into which the articles had been placed during search of defendant Stewart's apartment provided an identifiable link in the chain of possession. And the spoon, containing as it did a residue of cooked amphetamines, and found in Gersvold's residence, when coupled with his reputed admission that he used the spoon in making injections, tended to link Gersvold to the crimes charged. They were properly admitted as material evidence.

In his second assignment, defendant Gersvold asserts error in the admission of exhibit 30, his written statement, urging that it had been obtained by coercive measures. He says that the police threatened to prosecute his woman friend as an accessory and him as an habitual criminal. The police officer admitted that he had mentioned that, because of Gersvold's three prior felony convictions, he was possibly liable under the habitual criminal act and had also commented on the possibility that the defendant's friend might be implicated as an accessory, but denied that these statements had been made as threats or that Gersvold regarded them as threats.

The learned trial judge proceeded to try admissibility of exhibit 30 in the jury's absence pursuant to Rule of Pleading, Practice and Procedure 101.20W, RCW vol 0, 4

Orland, Wash. Prac. 536. Written entirely in longhand by Gersvold, the statement consists of four pages of narrative. At the top of each page is the following printed paragraph in which the defendant had written his full name, Arthur James Gersvold on page one and A. J. Gersvold on each of the next three pages. He had also signed each of the four pages. The preliminary paragraph said:

I *Arthur James Gersvold* make the following statements and answer the following questions to——————. I further state that I make this statement of my own free will and without threats or duress or promises made to me of any kind; further, I have been advised and understand that even though this is a voluntary statement, it may be introduced into court as evidence in this case or any other case which it may concern.

Following, except for the preliminary recitals, are the court's findings and conclusions under Rule 101.20W, *supra*, in their entirety:

### Findings of Fact
#### I.
That defendant was informed in open court that he need not testify at the hearing on the circumstances surrounding the confession, that if he does testify at the hearing he will be subject to cross examination with regard to the circumstances surrounding the taking of the confession or admission and with respect to his credibility for purposes of impeachment as a witness; and even though he should testify at the hearing he does not, by so testifying, waive his right to remain silent during the trial; and if he does so testify at the hearing, neither this fact nor his testimony at the hearing shall be mentioned to the jury unless he becomes a witness on the confession during the trial.

#### II.
### Undisputed Facts
Defendant was arrested on June 12, 1963 and soon after his incarceration in the Edmonds city jail, Officer Neuert of the Edmonds police department questioned defendant Gersvold, at which time said defendant denied implication in the offense for which he was arrested. This questioning was of short duration. The following morning, June 13, 1963, Officer Neuert again questioned

the defendant, at which time said defendant denied any knowledge of the matter in issue. Inquiry was also made with regard to the burglary of a tavern in Arlington. Defendant denied any implication in said burglary. Officer Neuert thereafter proceeded to Seattle, at which time he obtained a statement from Stewart, a co-defendant in this case. Officer Neuert brought this statement to the Edmonds jail, at which time said officer again questioned the defendant Gersvold, and told said defendant Gersvold that he had a statement from the co-defendant Stewart. Defendant Gersvold was not permitted to read said statement, and said statement of said co-defendant Stewart did not implicate or incriminate defendant Gersvold. At this time Officer Neuert informed the defendant Gersvold that he had a long criminal record and that it would be to his advantage to give a statement because he was subject to the habitual criminal act. Defendant, on being presented with a paper, wrote out the statement which was admitted in evidence.

### III.
### Disputed Facts

During a part of the last interrogation, defendant Gersvold was informed that his girl friend Karen, with whom he was then living, could be charged as an accessory. The statement that it would be to the advantage of the defendant Gersvold to make a statement because he was subject to the habitual criminal act was not stated as a threat, nor was such understood as a threat by the defendant, nor was the statement that the girl friend could be accused as an accessory made as a threat nor accepted by the defendant Gersvold as such.

From the foregoing Findings the court draws the following

### Conclusions

That the statement admitted in evidence was voluntary and admissible.

Defendant further attacks the admission of his written statement because he was not explicitly advised of his right to counsel nor to remain silent, and cites *Escobedo v. Illinois*, 378 U.S. 478, 12 L.Ed. 2d 977, 84 Sup. Ct. 1758 (1964), as the authority to exclude the exhibit.

■ Abundant evidence supports the trial court's findings that the statement was neither coerced nor involuntary, and that the defendant rendered it voluntarily. It thus became admissible, with its weight to be assessed by the jury.

This leaves only the question of whether the failure of the officer to initiate procurement of counsel for the accused and to point out to him his right to refuse to answer questions vitiates the statement and renders it a nullity as evidence.

■ Defendant, a man 27 years of age, apparently not mentally retarded, nor emotionally disturbed or psychotic, and being fully oriented as to place and time when questioned, and understanding the purposes for which the police interrogated him and sought his admissions, does not bring himself within either the spirit or letter of *Escobedo, supra.* He did not request counsel in general nor any particular attorney. He did not even indicate that he would prefer to postpone the interrogation until he had an opportunity to consult with an attorney.

On each of the four separate pages of his statement he twice acknowledged with his own signature that he made the statement of his own free will with knowledge that it could be used against him. This acknowledgment in writing that the statement was voluntary imports knowledge on the part of the defendant that he had a right to maintain his silence. And to this cogent circumstance, we have the added factor that defendant had thrice been convicted of felonies and was no novice at police interrogation. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965). The exhibit does not fall within the *Escobedo* doctrine, *supra.*

Judgment is affirmed.

ROSELLINI, C. J., HILL and OTT, JJ., and SHORETT, J. Pro Tem., concur.