[No. 39789.     Department Two.     March 14, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM J. WEISS, *Appellant.**

*Reported in 438 P.2d 610.

*Randolph S. Palmer*, for appellant.

*Joseph Panattoni* and *David H. Gorrie*, for respondent.

HUNTER, J.—The defendant (appellant), William J. Weiss, was found guilty by a jury of possession of marijuana under the Uniform Narcotic Drug Act, RCW 69.33, and he now appeals from the judgment entered upon the jury verdict.

It appears from the record that Weiss and James Nason were occupying a house at 300 East 16th Street in Ellensburg, Washington. On the early morning of March 10, 1967, four law officers, pursuant to a warrant issued by the justice court on March 9, 1967, entered and searched the

house. The officers found two marijuana cigarettes in the front room under a cushion of the couch. Their search also produced a small plastic container of seeds and traces of marijuana leaves and stems, discovered on a shelf of a small closet in the bedroom, concealed under some clothing. Nason and a visitor, Marvin Davis, were sleeping on mattresses on the floor of the front room when the officers entered. Weiss was found in the bedroom, occupying his large metal bed. None of the three admitted to any knowledge of the marijuana found in the house.

The searching officers testified that the house was run-down and in a very dirty condition. The floors were littered with refuse and unwashed clothing. This was confirmed by Nason and Davis, who testified for the state. It further appears that many people were accustomed to frequent the house, to sleep there and to leave belongings there. The house had been rented to one Linden Hope, who had paid the rent through February, 1967. Hope testified that he had moved to another house in January or February and that he had authorized Weiss and Nason to stay at 300 East 16th Street. One of the searching officers, Officer Horn, testified that, at the time of the search, the defendant said he lived at the house and was sharing the rent with Nason. Other testimony indicates that while no rent had, in fact, been paid for the month of March, Weiss had been staying at the house for "a month, on and off." Nason testified that he and Weiss had smoked marijuana together at the house at times previous to March 10.

The defendant was originally charged in justice court, but before the hearing the prosecutor filed an information in the superior court and had the initial proceeding dismissed. The jury found the defendant guilty of possession of marijuana. The court entered judgment and sentence accordingly, and the defendant appeals.

The defendant first contends that the evidence that he possessed the marijuana found in the house was insufficient to permit the case to go to the jury. He argues that the most that can be said of the evidence in the record is that it raises the possibility that he might have possessed the mar-

ijuana seized and that this is not enough to support the verdict.

■ We disagree. The record sustains the verdict. The jury was entitled to find, first, that the house was Weiss' residence. There was testimony that Weiss had been staying at the house for about a month, and that Weiss said he and Nason were sharing responsibility for the renting of the house, and that Weiss took it upon himself to invite others, including Marvin Davis, to sleep overnight at the house. Moreover, when the officers entered on the morning of March 10, Nason told Officer Pless that Weiss was in "his" bedroom. Nason further testified that Weiss had brought the large white iron bed in the bedroom from Quincy, his "home." Nason also testified that Weiss customarily slept in the iron bed. These facts indicate not only that Weiss was residing in the house but also that he was exercising dominion and control over it. It does not matter under the facts of this case that his dominion and control was not exclusive. See *Rodella v. United States*, 286 F.2d 306, (9th Cir. 1960); *State v. Hunt*, 91 Ariz. 149, 370 P.2d 642 (1962); *People v. Mateo*, 171 Cal. App. 2d 850, 341 P.2d 768 (1959). The jury could reasonably infer that Weiss knew about the marijuana found on the premises because Nason testified that Weiss had smoked marijuana at the house and that Weiss had known, on previous occasions, about the presence of marijuana in the house.

■ We are satisfied that these facts, taken together, are sufficient to justify the jury's finding that Weiss had dominion and control over the premises and knowledge of the presence of marijuana there amounting to constructive possession of the marijuana seized by the searching officers. This court will not disturb a verdict based upon substantial evidence. *State v. Davis*, 53 Wn.2d 387, 333 P.2d 1089 (1959).

The defendant contends that his motion to suppress the evidence seized in the search should have been granted because the warrant was improperly returned. He argues that the return, which stated that the items seized were found "in the possession of Weiss, Nason and Davis" was

insufficient to satisfy RCW 69.33.430, which requires that the return should be accompanied by

> a particular statement of all articles seized and the name of the person or persons in whose possession the same were found, if any . . . .

The return was proper because it did state "in whose possession the [articles seized] were found, . . . ." It is the state's theory in this case that the occupants of the house shared possession of the articles seized and the return, under the facts, is consistent with this theory.

■ The defendant also attacks the warrant because it was issued on March 9 and not returned until March 13, whereas the statute, RCW 69.33.430, requires that warrants be returned "within three days." This argument is baseless because we have held that the statute now codified as RCW 1.12.040 governs criminal as well as civil proceedings. *State v. Levesque*, 5 Wn. 2d 631, 106 P.2d 309 (1940). The statute reads:

> The time within which an act is to be done, as herein provided, shall be computed by excluding the first day, and including the last, unless the last day is a holiday or Sunday, and then it is also excluded.

Applying the statute to the period here in question, the first day, Thursday, March 9, and the last day, Sunday, March 12, are excluded in the computation. The return on March 13, a Monday, was therefore within the statutory time.

■ Next, the defendant contends that the dismissal of the complaint in justice court raised a bar to his subsequent prosecution for the same offense in superior court. RCW 10.43.010 specifies when dismissal of a prosecution bars subsequent prosecution on the same charge:

> An order dismissing a prosecution under the provisions of RCW 10.37.020, 10.46.010, and 10.46.090 shall bar another prosecution for a misdemeanor or gross misdemeanor where the prosecution dismissed charged the same misdemeanor or gross misdemeanor; but in no other case shall such order of dismissal bar another prosecution.

This statute does not apply to felonies, and the contention is therefore without merit. See *State v. Moore*, 60 Wn.2d 144, 372 P.2d 536 (1962). The defendant further argues that the reason given by the court for dismissal of the original complaint was insufficient under RCW 10.46.090, which requires that "the reason of [*sic*] the dismissal must be set forth in *the order*, . . ." (Italics ours.) The reason set forth in the justice court's order in this case was that the prosecuting attorney desired to file an information in superior court. The dismissal for this purpose was proper (see *In re Pennington v. Smith*, 35 Wn.2d 267, 212 P.2d 811 (1949)), and the reason given was sufficient under the statute.

█ The defendant contends that the trial court erred in admitting evidence over objection which related to other allegedly criminal acts committed by the defendant; namely, Nason's testimony that he and Weiss had smoked marijuana together and that Weiss knew there was marijuana in the house on a prior occasion.

Evidence of the commission of collateral criminal acts is admissible, as we said in *State v. Vindhurst*, 63 Wn.2d 607, 612, 388 P.2d 552 (1964), if it

> comes within one of the recognized exceptions: (1) to show motive or intent, (2) the absence of accident or mistake, (3) a common scheme or plan, (4) identity, or (5) if the evidence is relevant to any material issue before the jury. *State v. Goebel*, 36 Wn. (2d) 367, 218 P. (2d) 300 (1950). Or, such evidence may be admitted if it tends to prove some essential ingredient of the crime charged in the information. *State v. Dinges*, 48 Wn. (2d) 152, 292 P. (2d) 361 (1956), and cases cited.

The evidence complained of in this case was properly admitted because this evidence had a direct bearing on the issue of constructive possession, that is, whether the defendant knew of the presence of the marijuana found in the house where the defendant resided. See *State v. Hall*, 41 Wn.2d 446, 249 P.2d 769 (1952).

█ The defendant contends that the trial court erred when it permitted witnesses to testify concerning the dirty and unkempt condition of the premises. He maintains that

this evidence unfairly prejudiced the jury against him and was not relevant or material to the state's case. The evidence was properly admitted because the jury was entitled to know the condition of the premises at the scene of the alleged crime, and to give this evidence whatever weight it was entitled in the light of all the evidence in the case. See *State v. Rhinehart,* 70 Wn.2d 649, 652, 424 P.2d 906 (1967).

■ The defendant further argues, however, that the testimony concerning the unkempt state of the house was unnecessarily repetitious and that this resulted in prejudicing the jury against him. The record shows that the testimony in this regard was repeated by different witnesses for the state. The limitation of testimony to avoid unnecessary repetition is within the discretion of the trial court. We find no abuse of discretion in this instance.

The defendant assigns error to the trial court's dismissing the jury in order to admonish a witness. He argues that this was a comment on the evidence, because the jury must have interpreted the incident as disapproval by the judge of the witness' conduct on the stand; and hence necessarily, disapproval of the trustworthiness and credibility of the witness. This argument is without merit. The judge was entitled to admonish the witness and properly did so in the absence of the jury.

The defendant assigns error to the trial court's instruction on reasonable doubt, on the basis that it is an inadequate statement of the law, and contends that his proposed instruction should instead have been given. The instruction given reads as follows:

Instruction No. 3

The defendant is presumed innocent unless this presumption is overcome by proof establishing guilt beyond a reasonable doubt.

A reasonable doubt is a doubt for which a sensible reason can be given. It may arise from the evidence or lack of evidence.

■ The defendant argues that this instruction is inadequate because it defines reasonable doubt as, in effect, reasonable doubt and tells the jury nothing. We do not agree.

The instruction tells the jury that for the doubt to be reasonable, the reason upon which the doubt is based must be a sensible reason. While the instruction given is a correct statement of the law· we do not approve such an abbreviated instruction. The more comprehensive instruction proposed by the defendant would have been preferable. However, the trial court did not err in submitting the instruction given. *State v. Hawkins,* 70 Wn.2d 697, 708, 425 P.2d 390 (1967).

■ The defendant contends that the giving of the following instruction was error because it tended to confuse and mislead the jury:

Instruction No. 4
I instruct you that under the laws of the State of Washington the term "narcotic drug" includes all parts of the plant Cannabis Sativa, whether growing or not, including the seeds thereof which are capable of germination; but does not include the mature stalks of such plant.

The defendant concedes that the instruction correctly states the law, but he argues that the evidence introduced by the state failed to establish that the seeds found in the container in the closet were marijuana seeds, and hence that the instruction erroneously suggested to the jury that they consider the seeds as evidence bearing on the culpability of the defendant.

The record does not bear out the defendant's position. There is ample uncontradicted evidence in the record to support the conclusion that the seeds were in fact marijuana seeds—what is missing is evidence that the seeds were marijuana seeds *capable of germination.* Under these circumstances, the instruction was not erroneous. It was proper to instruct the jury as to the legal definition of "narcotic drug." Nor would the jury have had to base its verdict on a finding that the seeds were within the statutory definition of narcotic drug, RCW 69.33.220, because there was uncontradicted evidence that the two cigarettes found in the front room of the house contained marijuana, and that there was residue of marijuana found with the seeds in the container.

The defendant assigns error to certain statements made by the prosecutor, which, the defendant contends, were prejudicial. He argues that it was grounds for a mistrial for the prosecutor to refer, in his opening statement and on several later occasions, to the defendant's prior use and possession of marijuana. We reject this argument because we have already said that it was proper to introduce evidence as to these collateral acts, and it was not error, under the circumstances of this case, for the prosecutor to make references to properly admissible evidence which he intended to produce.

The defendant further argues that it was misconduct of counsel and unduly prejudicial for the prosecutor to detail the history of police investigations into the presence and use of narcotics at the premises. The comments were relevant to the introduction of testimony on the issue of knowledge of possession of narcotics by the defendant. Only in the event of the failure of the prosecutor to introduce such evidence at the trial would prejudice result. This could have been properly corrected by an instruction admonishing the jury to disregard these comments. A request for a corrective instruction was not made and any objection to the prosecutor's alleged misconduct was therefore waived by the defendant. See *State v. Morris*, 70 Wn.2d 27, 33, 422 P.2d 27 (1966).

Finally, the defendant argues that it was prejudicial for the prosecutor to refer in his closing argument to the dirty condition of the premises, and to say that this indicated "the level of existence to which this defendant has sunk." The defendant contends that this statement put his character in issue, and is grounds for a new trial. We disagree. Since it was proper to show the circumstances in which the defendant was living, so that the relationship between these circumstances and the crime charged could be evaluated by the jury, it was also proper for the prosecutor to comment on this evidence and to emphasize the state's theory that the condition of the premises was relevant to the commission of the crime charged. While we do not approve of the quoted remark, we think in this instance

that it falls short of prejudicial error, especially since the defendant failed both to object to the remark when it was made and to request a corrective instruction. *Jones v. Hogan,* 56 Wn.2d 23, 27, 351 P.2d 153 (1960), we said:

> If misconduct occurs, the trial court must be promptly asked to correct it. Counsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver on a motion for new trial or on appeal.

The judgment is affirmed.

FINLEY, C. J., HILL and HAMILTON, JJ., and EVANS, J. Pro Tem., concur.

*Reported in 438 P.2d 571.