[No. 32-40527-2.    Division Two.    December 30, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL L. TRETTON, *Appellant.*

McDonell & Alfieri and *James A. Alfieri,* for appellant.

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph Mladinov, Special Counsel, Eugene G. Olson, Chief Criminal Deputy,* for respondent.

PEARSON, J.—The defendant, Michael L. Tretton, appeals from a conviction for possession of marijuana. He was sentenced to the state penitentiary for a maximum period of 20 years.

On October 24, 1967 defendant rented an apartment in South Tacoma, where he lived with a young woman who was not his wife, but who was identified as such to the landlady. They lived together as husband and wife, occupying the same bedroom, until the time defendant was arrested on December 3, 1967. The evidence showed that rent for the apartment was paid personally by the defendant from October 24, 1967 until March 22, 1968, although the young woman may have contributed to the rent and groceries.

The apartment was small, consisting of a kitchen, a living room, and one small bedroom. The bedroom contained a bed where defendant and the girl slept, a nightstand with a drawer just inches from the bed, and a dresser. The nightstand was next to the side of the bed where the girl slept and was used exclusively by the girl for her personal articles and books. Defendant testified that he had seen her remove items from the drawer, but claimed never to have

opened the drawer or examined its contents. Tretton testified that he kept all of his personal belongings in the dresser, wholly apart from the girl's things.

At approximately 2:15 a.m. on December 3, 1967, Detective White of the Tacoma Police Department entered the apartment, incident to a lawful warrant for the defendant's arrest, and searched it. He found a plastic bag in the drawer of the nightstand, containing a substance he "thought was marijuana." At the time of the search, the defendant was in the company of the girl and two other men. Tretton denied knowledge of the presence of the marijuana in the nightstand.

Subsequent to discovery of the contraband substance, Detective White placed the plastic bag in a white, sealed envelope, marked it with the circumstances and date of its seizure, initialed the envelope, and placed it in the police evidence vault.

The bag remained in the vault for over 5 months before it was tested by Lt. Snyder, who was given the sealed envelope by White. Snyder initialed and dated the envelope upon receipt, then opened it and tested the material to determine whether it was marijuana.

His method of testing consisted of (1) studying the substance under a microscope, (2) performing a modified Duquenois Reagent Test, and (3) performing a hydrochloric acid test.

During the tests the material was kept in the police laboratory evidence room, to which four policemen had access. The envelope was not resealed during or after the tests, which were performed several days before trial. Lt. Snyder delivered the envelope and its contents to the court during the trial and identified it as the same substance delivered to him in the sealed envelope by Detective White. Likewise, Detective White identified the substance as that which he had removed from defendant's apartment at the time of the arrest.

Defendant's first assignment of error raises the question of whether or not the delay in testing the material (state

exhibit 1) after its seizure required its exclusion when considered in light of the allegedly weak chain of possession.

■ We do not consider the chain of possession weak or incomplete. An exhibit is sufficiently identified when it is identified as the same object and in the same condition as it was at the time of its seizure. *State v. Russell,* 70 Wn.2d 552, 424 P.2d 639 (1967). The identification of exhibit 1 by Detective White and Lt. Snyder was sufficient in this regard and established the chain of possession as complete and continuous.

■ The fact that other persons had access to the vault in which the envelope was placed does not alone create a missing link in the chain of custody. Lt. Snyder testified that he broke the seal on the envelope when he received it. This sufficiently establishes that the material had not been tampered with during the period it remained in the evidence vault. Moreover, the substance was kept in a secure place during and after its examination, as well as during the previous 5 months. *State v. Russell, supra.*

Likewise, the passage of time between seizure and testing does not alone establish remoteness from the criminal act or a break in the chain of possession such that the expert identification would not have value in corroborating the testimony of Detective White. *See State v. Mantell,* 71 Wn.2d 768, 430 P.2d 980 (1967). The jury could consider the lapse of time in attaching weight to the evidence. *People v. Preston,* 341 Ill. 407, 173 N.E. 383, 77 A.L.R. 631 (1930).

The defendant offered no testimony that the delay in testing exhibit 1 would cause it to change, either physically or chemically, as would be the case of an evaporable such as alcohol. *State v. Petrogalli,* 34 Idaho 232, 200 P. 119 (1921). Nor did defendant offer any evidence by which it might be inferred that the substance was tampered with. *See Brewer v. United States,* 353 F.2d 260 (8th Cir. 1965).

Defendant's second assignment of error challenges the

qualifications of Lt. Snyder as an expert in identifying state's exhibit 1 as marijuana.

Lt. Snyder conducted three widely recognized tests upon the exhibit, which confirmed his opinion that exhibit 1 was marijuana. As a member of the Identification Records Division of the Tacoma Police Department, Lt. Snyder had performed four or five hundred tests to identify marijuana. He learned these tests through police training and experience, as well as direct training of pathologists and toxicologists. Lt. Snyder was of the opinion that the positive test results of the three tests conducted by him proved the substance to be marijuana. *See State v. Thomas,* 75 Wn.2d 882, 454 P.2d 202 (1969). No contrary evidence was presented by the defendant. The qualifications of an expert are within the sound discretion of the trial court and no abuse of that discretion has been shown in this case. *Nordstrom v. White Metal Rolling & Stamping Corp.,* 75 Wn.2d 629, 453 P.2d 619 (1969).

The defendant claims that he was entitled to an instruction that it was not a crime to possess the mature stalks or sterile seeds of the marijuana. *See* RCW 69.33.220. This contention is without merit, since the defendant made no attempt to prove that the seized material consisted of only mature stalks or sterile seeds of the plant. Such was the burden of his defense after the state has established a prima facie case. *State v. Mudge,* 69 Wn.2d 861, 420 P.2d 863 (1966).

In conjunction with this contention, the defendant claimed that instruction 11 was erroneous in not properly excluding "mature stalks and sterile seeds" from the definition of the parts of Cannabis Sativa, which constitute a narcotic drug. While such an exclusion is proper (See *State v. Weiss,* 73 Wn.2d 372, 438 P.2d 610 (1968)) we see no error in the omission, in the absence of some testimony that exhibit 1 contained some substance other than illegal marijuana material. Lt. Snyder testified that he examined leaf fragments and seeds in identifying the substance. *See State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968), where it

was held that if any parts of the substance are narcotic it is immaterial that some portion may be non-narcotic.

Lastly, defendant contends that instruction 13 deprived him of the defense of unwitting possession and that there was insufficient evidence of constructive possession of the marijuana.

■ The trial court gave these instructions:

### INSTRUCTION No. 13

Possession may be actual or constructive. Actual possession exists when the property is in the individual occupancy of the person. Constructive possession is that possession which the law attaches to the legal title or ownership of property. And, where there is a right to the immediate actual possession of property, such possession is designated as "possession in law." One may have possession of property without having it actually on his person.

### INSTRUCTION No. 14

If you find from the evidence beyond a reasonable doubt that the defendant was on or about the dates set forth in the information, in Pierce County, State of Washington, in possession of the narcotic drug described in the information herein, then I instruct you that unless you find evidence to the contrary, the presumption arises that this possession of such drug was unlawful and the burden of showing that such narcotic drug was lawfully obtained and/or unwittingly possessed by the defendant is a matter of defense to be proved by evidence sufficient to raise in your minds a reasonable doubt as to the unlawfulness of the said defendant's possession of such drug.

Instruction 13 properly sets forth the law in this state on constructive possession, and has been approved before. *State v. Parent,* 123 Wash. 624, 212 P. 1061 (1923); *State v. Walcott,* 72 Wn.2d 959, 435 P.2d 994 (1967).

There was ample evidence to support an instruction on and a finding of constructive possession. Defendant was a tenant of the small apartment, the rental for which he had arranged. He lived in the apartment at the time of his arrest and continually for more than a month prior to the

arrest. The marijuana was found in the drawer of the nightstand within inches of the bed where he slept. We believe that under these facts the defendant had dominion and control of the premises and could be found to have been in constructive possession of the marijuana. *State v. Callahan*, 77 W.D.2d 26, 459 P.2d 400 (1969); *State v. Chakos*, 74 Wn.2d 154, 443 P.2d 815 (1969).

Defendant testified that he knew in a general way that the girl kept jewelry and books in the drawer and had seen some items in the drawer when she opened it. However, he claimed never to have gone through the drawer, did not know its precise contents, and was unaware of the presence of marijuana.

The burden was on defendant to prove the defense of unwitting possession. *State v. Morris*, 70 Wn.2d 27, 422 P.2d 27 (1966). We cannot say as a matter of law that his testimony established this defense. The jury could very well have disbelieved his testimony, since he reversed himself on the witness stand in response to questions about whether or not he had seen marijuana before.

The judgment and sentence are affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.