[No. 504-2.    Division Two.    July 13, 1973.]

THE STATE OF WASHINGTON, *Appellant*, v. RICHARD HULTS, *Respondent.*

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov,* for appellant.

*Alan Rasmussen,* for respondent (appointed counsel for appeal).

PETRIE, J.—Defendant, Richard Hults, was charged by information with unlawful possession of a dangerous drug, marijuana, with intent to sell. The information was dismissed at the conclusion of the state's evidence for failure to present a prima facie case and the state appeals. The posture of the case requires that we view the evidence and all reasonable inferences derived therefrom in the light most favorable to the state.

On Thursday, June 25, 1970, four officers attached to the Tacoma police narcotics detail began periodic surveillance of a 2-story residence on Northeast 65th Street. The house was situated in a secluded spot, set back some 300 yards from the road. Between Thursday and Sunday, the defendant was seen coming and going from the house on several occasions. On Sunday, June 28, 1970, the officers obtained a search warrant and returned to the vicinity of the residence. Before approaching the house, the four officers observed the defendant, accompanied by another person, drive up to the house in an older model Cadillac. Two of the officers went to the back door of the house and were admitted by one Carlton Gunther. The other two officers went to the front of the house. Defendant, another man and a woman were on a sun deck, outside the house. All parties proceeded into the house, the warrant was read to the assembled group and the officers began their search of the premises.

The search of the house resulted in the discovery of a large quantity of suspected marijuana. The substance discovered was individually packaged in separate 2.2 pound quantities, and each "kilo" was similarly wrapped in foil. An open cardboard box was found in a bedroom on the first floor. This box contained 33 kilos. Exhibit No. 1. Among some camping gear in the basement, a duffel bag was found with 7 kilos. Exhibit No. 4. A single, opened kilo was discovered in a dresser drawer in an upstairs bedroom. In the

headboard of the bed in the same bedroom a handbook on marijuana was also found. In addition, two live potted plants resembling marijuana were seized from the sun deck. Defendant was found to have $1,600 in cash on his person. The officers testified that sales of marijuana were cash transactions almost without exception, and that a kilo of marijuana was worth between $140 and $200.

The search further revealed defendant's Corvette automobile and defendant's motorcycle parked in the basement garage. The basement of the house had been set up for band rehearsal and a number of instruments were discovered. Moreover, defendant was known to be a musician; a guitar and case, which he admitted owning, were found somewhere in the house.

Correspondence addressed to various individuals at the 65th Street house was also discovered. Detective White found "some papers with Rick Hults' name on them in the dining room area." Three pieces were introduced in evidence by the state: (1) a bank statement, postmarked May 7, 1970, addressed to defendant; (2) a bill for repairs to a Corvette, postmarked June 1, 1970, addressed to defendant; and (3) a garbage bill for the house, covering the months of April, May and June, 1970, postmarked June 2, 1970, addressed to Doug Taylor. Detective Six found some two hundred to three hundred pieces of paper in one of the two dressers of the upstairs bedroom in which the marijuana was found. He testified that he saw Mr. Hults' name on approximately 40 of the "letters, bills, so forth." He saw no other name on the other bits of correspondence.

Subsequent to the search of the house, the individual kilos found in the duffel bag and cardboard box were checked for fingerprints. Seven latent prints were found, of which three were identifiable. The state offered to show that the identifiable prints belonged to defendant and were recovered from two, possibly three, different kilos. The fingerprint expert, however, had not kept record of precisely where the prints came from and could only testify that they were lifted either from kilos in the duffel bag (exhibit

4) or the cardboard box (exhibit 1) or both. The kilo found in the upstairs bedroom was excluded as a source of the prints. The trial court refused the state's offer of proof.

After the police fingerprinted the kilos, they were taken to the drug analysis unit, where random samples from the cardboard box and from the kilo found in the upstairs bedroom were analyzed and found to be marijuana. Moreover, during the trial, two randomly selected samples from the duffel bag were examined and found to contain marijuana. The trial court admitted only those kilos from which samples had been analyzed. All other kilos were rejected. None of the state's witnesses could testify that any kilo admitted into evidence was one from which a latent identifiable fingerprint had been lifted.

The state first assigns error to the trial court's granting of defendant's motion to dismiss at the close of the prosecution's case. It contends that sufficient evidence of possession of marijuana was introduced to warrant submission of that issue to the jury. The state concedes that defendant did not have marijuana on his person at the time of his arrest. No serious issue of actual possession is presented by this appeal. The defendant's access and proximity to the cache of marijuana and his fingerprints on two or three of the kilos is totally insufficient to establish actual possession. *State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969). We turn, therefore, to consideration of whether or not the state has presented sufficient evidence from which a jury could infer the defendant was constructively in possession of marijuana.

In order to establish that defendant had constructive possession of the drugs it is essential to prove that he exercised dominion and control over the premises at the time of the search. *State v. Callahan, supra.* The state's evidence that the defendant was in constructive possession of the marijuana was entirely circumstantial. There was no direct testimony that defendant resided in the house. The scope of our review is limited, therefore, "to a determination of whether the state has produced *substantial evidence*

tending to establish circumstances from which the jury could reasonably infer the fact to be proved." *State v. Dugger,* 75 Wn.2d 689, 690, 453 P.2d 655 (1969). If that quantum of evidence exists then there is some proof of this element and its weight becomes a question for the jury. *State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971).

The officers testified that they observed the defendant coming and going from the residence on the 3 days prior to the search. No personal clothing or toilet articles identifiable as belonging to the defendant were found inside the house, but such items are not readily amenable to individual identity. However, the officers did find his car, motorcycle, and musical instrument on the premises. On the day of the search, he drove to the premises in a third motor vehicle. In addition, many items of personal correspondence belonging to defendant were found in a chest of drawers in an upstairs bedroom. A search of the same chest of drawers also produced a kilo[1] of marijuana.

Two items of correspondence found in the dining area, addressed to defendant, were introduced into evidence. One was a repair bill for a Corvette automobile, inferentially the same car found parked in the basement. The other was a bank statement with one check enclosed. The check was dated over 3 months before the search and had defendant's name and the 65th Street address preprinted on its face. The bank statement was postmarked May 7, 1970, more than a month before the search. Assuming bank statements are mailed monthly, it would not necessarily have been the last statement sent prior to the search. The third item of correspondence introduced as evidence indicated that someone other than the defendant was the party to whom the garbage collectors looked primarily for payment of garbage bills.

---

[1] It should be noted that possession of 40 grams or more of marijuana would have supported the charge against the defendant. RCW 69.40.090, subsequently repealed by Laws of 1971, 1st Ex. Sess., ch. 308, § 69.50.606.

The fingerprint evidence, assuming its admissibility, while it may be insufficient to support actual possession, at the very least indicated that the defendant had some knowledge of the presence in the house of several foil-wrapped kilos. The handbook on marijuana, found in the headboard of the bed in the upstairs bedroom, indicated that the person or persons who occupied the bed at least had some passing interest in the subject. The rather large amount of cash found on the defendant's person at the time of arrest, while not overly significant, was at least consistent with what might be expected of a person who traffics in drugs.

Viewing this evidence in a light most favorable to the state, there is clearly substantial evidence from which the jury could reasonably conclude that at some time recently prior to the search, the defendant held out the 65th Street house as his residence and had formed a more or less permanent attachment to it. Most clearly, it can be said that he had dominion and control over the upstairs bedroom. Further, the jury could reasonably conclude that at some time in the recent past he had general access and use of the entire premises. Given the relatively brief time span from the dates on the correspondence to the date of search, the continuing presence of the correspondence, and the presence of two of the defendant's motor vehicles, it would seem quite reasonable to infer that the residency continued. The fact that we may conclude the evidence in some respects is unconvincing to establish dominion and control, or hard to reconcile with other conflicting evidence, does not detract from the fact that a jury question is nonetheless presented. *State v. Lewis*, 55 Wn.2d 665, 349 P.2d 438 (1960). No item of evidence, standing alone, is sufficient to establish defendant's dominion and control over the premises in this case. Cumulatively, however, the evidence is sufficient to create an issue of fact as to whether the defendant exercised dominion and control, partially or wholly, over the residence in question at the time of the

search. It was, therefore, error to dismiss the information at the close of the state's evidence.

Because a new trial is necessitated by our holding, we must consider the state's two remaining assignments of error in the event the questions may again be posed upon retrial.

The state assigns error to the exclusion by the trial court of all packages contained in exhibits 1 and 4, which were not specifically tested and found to contain marijuana. However, random samples were taken from four packages in exhibit 1, and two from exhibit 4. All samples tested were found to be marijuana. The court ruled that the quantity admitted was far in excess of the minimum needed to prove possession with intent to sell, and that the defendant would be unduly prejudiced by the admission of the additional kilos. The state contends that all items in these exhibits should have been admitted because it was reasonable to infer that all packages (similar in appearance and randomly selected) contained the same substance as those already tested.

Evidence material to any issue, if under no excluding disability, is admissible. Any competent evidence tending logically to prove the commission of a crime or the defendant's connection with it, is deemed material to the state's case. *State v. Gersvold,* 66 Wn.2d 900, 406 P.2d 318 (1965). Relevancy—the logical proof tending toward a fact—is furnished when competent evidence establishes that the sample, randomly selected from among similar items, identifies the fact. Materiality is established when proof of that fact is a material issue in the case. Admissibility follows unless the evidence is under some excluding disability.

The excluded foil-wrapped packages, after random samples established the identity of the contraband, are certainly material to one of the major issues to be proved in this case. Ordinarily, they should be admitted. Whether or not the other kilos in these exhibits fall under the excluding disability of cumulative evidence unnecessarily prejudi-

cial to the defendant is usually a matter which rests in the sound discretion of the trial court. The state is entitled to strike a hard blow, but not an unfair blow. The extent to which cumulative evidence unnecessarily prejudices a defendant is a matter best left to the sound discretion of the trial court. Upon retrial, the trial court will undoubtedly exercise its own discretion depending upon the manner in which the issue is presented to it.

Finally, error is assigned to the refusal by the trial court to admit fingerprint evidence lifted from at least two of the marijuana bricks. The state was unable to show from which exhibit the prints were lifted. Exhibit 1 contained 33 kilos and exhibit 4 contained 7 kilos. The state could only show that the fingerprints were lifted from more than one of the packages. Whether defendant's prints were found entirely on one exhibit or on both was unknown. It should be remembered that exhibit 1 was found in the main floor bedroom; exhibit 4 was found in the basement. No identifiable prints were lifted from the single kilo found in the upstairs bedroom.

Measured by the test of admissibility set forth above, we find no reason for refusing to admit the conclusions of a properly qualified expert as to the identity of the person whose fingers match the latent prints lifted from the two exhibits. The evidence would have established the defendant's knowledge of what was in the main floor bedroom and in the basement. The officer whose conclusions were rejected should have been allowed to relate them to the jury.

Judgment reversed and remanded for new trial.

ARMSTRONG, J., concurs.

PEARSON, C.J. (dissenting)—It is my opinion that the learned trial judge properly exercised his discretion in dismissing the charges against defendant. Accordingly, I dissent.

I do agree with the following holdings of the majority:

(1) Actual possession of the marijuana by defendant

was not established as a matter of law. The case of *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969) compels such a conclusion.

(2) It was within the broad discretion of the trial court to exclude the many packages of alleged marijuana, the contents of which had not been tested, for the reasons stated by the majority.

However, I depart from the conclusion of my colleagues that the fingerprint evidence was proper, since the state failed to prove specifically that the contents of the packages which bore the defendant's fingerprints contained marijuana.

A broad discretion rests in the trial court with reference to the admission of this type of evidence, and particularly should this be so where there is a defect in either the identification of the evidence or a defect in the chain of evidence. I would hesitate to find an abuse of discretion in the face of an almost unbelievably careless job done by the police in failing to keep track of the tested packages, or of the location where the tested packages were found on the premises, and in failing to test the packages containing the fingerprints or to identify the locus of those packages.

The broad discretion which the trial court has in this area of criminal jurisprudence was discussed in *State v. Brooks*, 3 Wn. App. 769, 479 P.2d 544 (1970) and *State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970). Under the principles of those cases, I do not find an abuse of discretion in this case.

However, even if it were assumed that the fingerprint evidence should have been allowed, I still would agree with the trial court that the state failed to make a prima facie case that defendant had dominion and control over the premises in which the marijuana was found. In my opinion, the evidence that defendant had handled one or more of these packages is no more probative of constructive possession than it would be of actual possession. *State v. Callahan, supra*. The momentary handling principle discussed in *Callahan* should apply with equal force to a case grounded

in constructive possession as it does in actual possession. For this reason the error, if any, in excluding the fingerprint evidence was harmless.

Where I must substantially depart from the majority opinion is its holding that the state made a prima facie case that defendant had dominion and control of the premises where the marijuana was found.

My disagreement with the majority stems from its assumption that circumstantial evidence pointing to the fact that defendant may have previously occupied the premises, coupled with circumstantial evidence of his present occupancy, represents a sufficient prima facie showing that he had dominion and control of the home.

This assumption is faulty, in my opinion. In *State v. Callahan, supra,* the defendant (1) admitted *actual* occupancy of the houseboat at the time of his arrest and for 2 or 3 days prior to that time, (2) admitted that he knew the drugs were there, (3) admitted that his personal property was there, (4) admitted that he had handled the drugs, and (5) was within a few feet of the drugs at the time they were discovered.

If the evidence of *actual* occupancy shown in *Callahan* is insufficient in law to establish dominion and control, then the circumstantial evidence pointing to defendant's occupancy of the premises in this case is clearly insufficient to prima facie establish his dominion and control of the premises.

In the case at bar, there is not one shred of evidence that defendant had any "legal" connection with the premises, other than as a past occupant, or at the time of the search as a musician who rehearsed at the premises with his group. Furthermore, the current utility bill for the premises covering the month in which the search and arrest occurred was posted to one "Doug Taylor."

As in *Callahan,* there was no testimony that defendant was a tenant, nor that he participated in paying the rent or maintained the place as his residence. There was no testimony that he ever remained at the premises overnight.

Furthermore, all of the cases considered by the Supreme Court and discussed in *Callahan,* where constructive possession was allowed, have involved proof of some "legal" connection to the premises, such as *tenancy,* or have involved evidence of residency tantamount to tenancy.[2] Such has also been the thrust of prior decisions of this court. *State v. Tretton,* 1 Wn. App. 607, 464 P.2d 438 (1969); *State v. Werry,* 6 Wn. App. 540, 494 P.2d 1002 (1972). Such an application of the constructive possession rule is, I think, entirely proper and necessary to insure against miscarriage of justice.

There are today many instances of young people entering into loose living arrangements, particularly around colleges and universities. Short-time occupancies occur with sufficient frequency that I am loath to permit strained inferences of dominion and control from such types of occupancies.

To impute, or allow juries to find, dominion and control so as to establish constructive possession on the paucity of evidence presented in this case would, in my opinion, unduly threaten innocent persons with drug charges properly attributable to others. I believe this to be the real thrust of *Callahan,* a thrust with which I agree.

I would restrict application of the constructive possession theory to those instances in which (1) a tenancy is established, (2) a permanent type of residency indicative of a tenancy is established, or (3) where dominion and control may reasonably be inferred from circumstances other than occupancy alone. Since none of these factors was established prima facie, I think the trial court was correct in dismissing the information.

I have another reason for my view. The constructive possession theory of criminality is not strictly a factual theory. Instead, it is partly a legal fiction which is utilized

---

[2]Possession of the key to the premises was held sufficient in *State v. Mantell,* 71 Wn.2d 768, 430 P.2d 980 (1967), but there was also direct evidence that defendant was participating in preparation of drugs for sale.

to impose criminality on those who are shown to have a sufficiently close "legal" connection to the locus where drugs are found, which, for policy reasons, should be considered the legal equivalent of actual possession. Its application should, therefore, be cautiously and strictly considered, so that miscarriages of justice are not likely to occur. Under these circumstances, I think the trial court should have some discretion, which strict application of the circumstantial evidence rule enunciated in *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971) does not allow, to determine whether the "legal" connection of defendant to the locus is sufficiently shown so as to prevent a possible miscarriage of justice.

I am in complete agreement with the statement of the Supreme Court in *State v. Golladay, supra*, citing with approval at page 130 from *State v. Weaver*, 60 Wn.2d 87, 88, 371 P.2d 1006 (1962): "While a conviction may be sustained solely on circumstantial evidence, the circumstances proved must be unequivocal and inconsistent with innocence." (Footnote omitted.)

For these reasons, and because there was not one shred of evidence, circumstantial or otherwise, which bore directly or indirectly on defendant's control of the premises as distinguished from his occupancy, I would affirm the judgment of dismissal.