2015 JUL -6  AM 10: 3


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71191-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORNELIUS RITCHIE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED:  July 6, 2015 |
| | ) | |

VERELLEN, A.C.J. — A jury convicted Cornelius Ritchie of five counts of possession of a controlled substance with intent to deliver.  The prosecutor argued in closing that Ritchie had actual but not constructive possession of the drugs.  The State now concedes there is insufficient evidence of actual possession, but argues for the first time on appeal that sufficient evidence supports constructive possession.  We need not reach Ritchie's arguments that the State is precluded from changing its position on appeal.  We conclude there is insufficient evidence of actual or constructive possession of the drugs.  Knowledge of the presence of drugs together with mere proximity to and momentary handling of the drugs are insufficient to support Ritchie's convictions.  We reverse.

## FACTS

On May 17, 2013, Ritchie and a woman walked along a trail in a wooded area.  At the time, Ritchie was under community custody supervision.  His community

corrections officer Grace Sholtz had requested that Ritchie report to the Department of Corrections. Officers Sholtz and Nathan Bajema located Ritchie near the trail via a global positioning system device that Ritchie wore. The officers saw Ritchie leave the trail, crouch down by some bushes in a public area, and appear to move his hands under the bushes. The officers could not see Ritchie's hands. Nor did the officers see Ritchie carrying anything. Ritchie returned to the trail moments later and left the area.

In the area where Ritchie had crouched down, the officers found a purse, an eyeglasses case, and a film canister covered lightly with debris and partially hidden in the bushes. The officers had never previously seen Ritchie with those items. Inside the eyeglasses case, the officers found 27 different colored pills containing four different controlled substances. Ritchie did not have a prescription for any medication. The officers also found marijuana inside the purse and hashish inside the film canister.

Ritchie testified that he had never seen those items before, never touched them, and did not know what was in them. He also testified that he did not put the items in the bushes but only briefly looked at them.

Soon after he returned to the trail, Ritchie reported to his community corrections officers. They arrested Ritchie and read him his Miranda[1] rights. When asked about the items, Ritchie said that his female friend had told him about them, that he was only checking them out, and that he further concealed them to try to hide them.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The trial court admitted several text messages retrieved from Ritchie's phone:[2]

- Sent by Ritchie on May 3, 2013: "I texted you at around that time for I was going to come pick you up if you came to town. Drive you home and get your ass smoked the fuck out. And give ya some hash and pills so you could party party with you friends and roommates. LOL."[3]

- Received on May 12, 2013: "Hey so my roomies are really interested in doing something harder than pot, like e and I heard you mention it once plus I don't know anyone else so if thats a possibility will you let me know? Hehe is that weird? I feel like i shouldnt feel awk about that but idk? :)"[4]

- Sent by Ritchie on May 12, 2013: "Well you should of asked sooner and I could of just gave you some E. plus you shouldn't feel awk asking me about anything. What I will do is call the bitch who usually has it and ask her for some. Enough for two or three people right. Know you want to get in on that right. Lol. So does this sound good."[5]

- Sent by Ritchie on May 15, 2013: "Jess, hey you. Might need to come over tomorrow and do some stuff. People who will meet me there don't want lots of people around if you know what I mean. This will be around 10am. So is it cool to come over then if need be. Plus remember. You are my #1go to girl on all my product. You and Brian. Hit me up."[6]

- Sent by Ritchie on May 17, 2013: "This idiot loves you to. Very much so. Plus wanted to tell you that our pills are all money makers and were looking at like 600 bucks. That's 300 each for they and the money from them are ours. Okay. Promise."[7]

The trial court also admitted evidence that Ritchie had used his phone to search the Internet and identify pills similar to those found in the eyeglasses case.

---

[2] The text messages are unedited and in their original form.

[3] Report of Proceedings (RP) (Oct. 15, 2013) at 215-16.

[4] Id. at 216.

[5] Id. at 216-17.

[6] Id. at 217.

[7] Id. at 218.

The trial court admitted one of Ritchie's recorded jail phone calls:

[R]emember how she [the prosecutor] told me there was six counts, she read six counts, I kind of swore, they said five counts of possession. The prosecutor said it then it can only be five counts because there was only five prescription pills plus weed and marijuana, weed and hash and *my weed and hash. Dude it's not.* They can't even use that in this court so that leaves fi[v]e.[8]

A jury convicted Ritchie of five counts of possession of a controlled substance with intent to deliver.

Ritchie appeals.

## ANALYSIS

Ritchie contends insufficient evidence supports the possession element of his convictions. We agree.

In a sufficiency challenge, our review is "highly deferential to the jury's decision."[9] Evidence is sufficient to support a conviction if it permits any rational trier of fact to find the crime's essential elements beyond a reasonable doubt.[10] Both circumstantial and direct evidence are equally reliable in determining the evidence sufficient to sustain a jury's guilty verdict.[11] "An insufficiency claim admits the truth of the State's evidence."[12] We view the evidence and all reasonable inferences in the light most favorable to the State.[13]

---

[8] Id. at 241 (emphasis added).

[9] State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

[10] State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

[11] State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2009).

[12] State v. Bowen, 157 Wn. App. 821, 827, 239 P.3d 1114 (2010).

[13] Kintz, 169 Wn.2d at 551.

The State was required to establish beyond a reasonable doubt both the nature of the substance and the fact of possession by the defendant.[14] "Possession is defined in terms of personal custody or dominion and control."[15] "The State may establish that possession is either actual or constructive."[16]

The prosecutor here argued to the jury in closing that Ritchie actually possessed the drugs as he walked along the trail:

> [T]he defendant *actually possessed* these drugs, not constructively possessed these drugs. He was not seen with these drugs, but just prior to seeing him our belief is that the defendant was possessing them. That would be actual possession, okay.[17]

But the drugs were never found on Ritchie's person. No one ever saw him holding any drugs or any containers on the trail or by the bushes. The State now concedes there is insufficient evidence of actual possession, but argues for the first time on appeal that sufficient evidence supports constructive possession.

The trial court instructed the jury on constructive possession:

> Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substances.

> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.

> In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the ability to take actual possession of the substance,

---

[14] RCW 69.50.401

[15] State v. Staley, 123 Wn.2d 794, 798, 872 P.2d 502 (1994).

[16] Id.

[17] RP (Oct. 16, 2013) at 397.

whether the defendant had the capacity to exclude others from possession of the substance, and whether the defendant had dominion and control over the premises where the substance was located. No single one of these factors necessarily controls your decision.[18]

A defendant must have dominion and control over the drugs.[19] Dominion and control is determined based on the totality of the circumstances.[20] The defendant's dominion and control need not be exclusive.[21] Generally, dominion and control means the defendant can immediately convert the drugs to his or her actual possession.[22] But the State "'must prove more than a passing control,'" or mere momentary handling.[23] The State "'must prove actual control.'"[24] Mere proximity to drugs is insufficient to establish constructive possession.[25] Additionally, knowledge of the presence of a controlled substance alone is insufficient to establish dominion and control.[26]

Viewed in a light most favorable to the State, a jury could reasonably infer that (1) Ritchie knew where the containers were located, (2) he knew the containers' contents, (3) he was momentarily in close proximity to the containers, and (4) he covered the containers with debris "to try and hide them."[27] But Ritchie's mere proximity

---

[18] Clerk's Papers at 69.

[19] Bowen, 157 Wn. App. at 827-28; State v. Shumaker, 142 Wn. App. 330, 331, 174 P.3d 1214 (2007).

[20] State v. Summers, 107 Wn. App. 373, 384, 28 P.3d 780 (2001).

[21] State v. Weiss, 73 Wn.2d 372, 375, 438 P.2d 610 (1968).

[22] State v. Reichert, 158 Wn. App. 374, 390, 242 P.3d 44 (2010).

[23] Davis, 182 Wn.2d at 227 (quoting Staley, 123 Wn.2d at 801).

[24] Id. (quoting Staley, 123 Wn.2d at 801).

[25] State v. Portrey, 102 Wn. App. 898, 902-03, 10 P.3d 481 (2000).

[26] State v. Davis, 16 Wn. App. 657, 659, 558 P.2d 263 (1977).

[27] RP (Oct. 15, 2013) at 135.

to and momentary concealment of the containers were limited in both scope and duration.

Even if we view Ritchie's conduct by the bushes as handling the containers, his handling was only momentary. No evidence suggests Ritchie could have immediately converted the drugs to his actual possession before or after he was near the bushes. He had no ability to exclude others from possessing the drugs under the bushes in a public area. Even viewed in a light most favorable to the State, there is no evidence or inference that Ritchie had dominion and control over either the drugs or the public area where the drugs were found.

The State relies upon State v. Hults[28] and State v. Portrey.[29] But those cases are distinguishable.

In Hults, the court held that the defendant constructively possessed drugs found in a house. Hults frequented the house for several days before police searched it. His vehicles and musical instruments were found on the premises. His personal correspondence (along with some drugs) and a marijuana handbook were also found in the house. A large amount of cash was found on Hults's person. Hults's fingerprints were found on drug packaging in the house. The court concluded Hults had dominion and control over the premises and thus constructively possessed the drugs.[30]

Unlike Hults, Ritchie's connection with the drugs found under the bushes was minimal. The officers saw Ritchie by the bushes only once and only momentarily. No

---

[28] 9 Wn. App. 297, 513 P.2d 89 (1973).

[29] 102 Wn. App. 898, 10 P.3d 481 (2000).

[30] Hults, 9 Wn. App. at 302-03.

evidence suggests Ritchie had any other connection with the bushes where the drugs were found. None of Ritchie's correspondence or personal items were found near the drugs or under the bushes. The containers were in a public area, not a house. Further, there was no fingerprint evidence connecting Ritchie with the containers.

In Portrey, the court held that the defendant constructively possessed drugs in a field. Portrey was found near marijuana plants growing in a field. He tried to conceal himself from aerial police spotters by lying in bushes near the marijuana plants. He wore a camouflage jacket on a warm day. His residence was 200 yards from the marijuana plants. Trails near the marijuana plants led to Portrey's residence. Police found black tubing in his residence similar to that used around the base of some of the marijuana plants. The court concluded a jury could reasonably infer that the defendant constructively possessed the marijuana.[31] Unlike Portrey, Ritchie's momentary proximity to the drugs, his knowledge of the containers' contents, and his attempt to conceal the containers do not establish dominion and control.

The State argues there is a reasonable inference that Ritchie handled and controlled the drugs and was not merely in close proximity. But any handling of the containers was fleeting, and any control was passing. The State cites no compelling authority that Ritchie had dominion and control of the drugs in the containers.

The State also argues Ritchie admitted in the recorded jail phone call that the weed and hash were his. But the State fails to consider the context. In the recorded jail phone call, Ritchie stated:

---

[31] Portray, 102 Wn. App. at 904.

[R]emember how she told me there was six counts, she read six counts, I kind of swore, they said five counts of possession. The prosecutor said it[,] then it can only be five counts because there was only five prescription pills plus weed and marijuana, weed and hash and *my weed and hash. Dude it's not.* They can't even use that in this court so that leaves fi[v]e.[32]

Ritchie's statement could hardly be more equivocal. Immediately after saying "my weed and hash," Ritchie said, "Dude it's not." Ritchie did not admit ownership.

Evidence at trial revealed that Ritchie had searched the Internet on his cell phone to identify pills similar to those found in the eyeglasses case. This evidence may support a reasonable inference that Ritchie knew the case's contents. But that inference does not establish that Ritchie actually controlled the pills.

The State contends the five text messages are consistent with constructive possession. The text messages were admitted over ER 404(b) objections as evidence of a common scheme or plan.[33] The State now concedes that the text messages did not evidence a common scheme or plan but qualify as res gestae evidence, completing the story of the crime and providing context to events close in time and place to the charged crimes.

We are especially troubled by the prosecutor's argument to the trial court that the text messages should be admitted because "essentially we're calling the defendant a drug dealer."[34] "[E]vidence that relies on the propensity of a person to commit a crime

---

[32] RP (Oct. 15, 2013) at 241 (emphasis added). The record also includes a compact disk containing the recorded phone call.

[33] Ritchie's counsel at trial made a comprehensive ER 404(b) objection to the admission of the five text messages.

[34] RP (Oct. 14, 2013) at 32.

cannot be admitted to show action in conformity therewith."[35] The prosecutor's theory would gut the essential purpose of ER 404(b).[36] The text messages are not admissible on the theory that because Ritchie is a drug dealer, he must have possessed the drugs with the intent to deliver them. Additionally, the May 3, 2013 text message was remote, not within two or three days of the May 17, 2013 events at issue.[37] The May 12, 2013 text messages requesting and offering delivery of Ecstasy are not relevant to the charged crimes.

Even assuming the May 15, 2013 text message referring to "product" and the May 17, 2013 text message referring to the pills as "money makers" are admissible as res gestae evidence, they do not establish Ritchie's dominion and control over the drugs found under the bushes in a public area. Those text messages at most provide circumstantial evidence of Ritchie's interest in selling pills but do not necessarily demonstrate his dominion and control over the drugs in the containers. Even when viewed in the light most favorable to the State, a mere scintilla of evidence connecting Ritchie to the drugs does not support an inference of dominion and control.[38]

---

[35] State v. Wade, 98 Wn. App. 328, 334, 989 P.2d 576 (1999).

[36] Id. at 336

[37] See State v. Brown, 132 Wn.2d 529, 569-76, 940 P.2d 546 (1997) (evidence of similar events occurring within a two-day period of the charged crime admissible under res gestae theory); State v. Lane, 125 Wn.2d 825, 833, 889 P.2d 929 (1995) (same).

[38] See State v. Harris, 14 Wn. App. 414, 418, 542 P.2d 122 (1975) (deputy's testimony that he obtained trunk keys from either the husband or the wife was a mere "scintilla of evidence" insufficient to establish dominion and control by the wife over the trunk's contents).

## CONCLUSION

The State concedes that Ritchie did not actually possess the drugs and fails to establish constructive possession. There is no evidence or reasonable inference that Ritchie had more than mere proximity, momentary handling, or passing control of the drugs. His knowledge that drugs were present does not establish actual control. Ritchie did not have the ability to exclude others from the drugs in the bushes in a public area. The State provides no persuasive authority that Ritchie constructively possessed the drugs. We conclude there is insufficient evidence to support Ritchie's convictions for five counts of possession of a controlled substance. Consequently, we need not reach Ritchie's other assignments of error.

We reverse.

WE CONCUR:

_____
Cox, J.

_____
Becker, J.