[Nos. 38946, 38969, 38970,     En Banc.          July 18, 1968.]
38971, 38972, 38973, 39031.

THE STATE OF WASHINGTON, *Respondent*, v. JOYCE EDNA CHAKOS *et al., Appellants.*

THE STATE OF WASHINGTON, *Respondent*, v. JAMES C. WALL, *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. PAUL HOWARD DAVIS, *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. PETER AANDAHL CHRISTOFFERSON *et al., Appellants.**

*Byron D. Coney,* for appellants Chakos *et al.*

*Clinton, Moats, Anderson & Fleck,* by *Richard J. Glein,* for appellant Coleman (appointed counsel for appeal).

*Charles O. Carroll* and *Thomas A. Stang,* for respondent.

HAMILTON, J.—This is a consolidation of six separate appeals from convictions for possession of marijuana in violation of the Uniform Narcotic Drug Act, RCW 69.33, and, in one case, from a conviction for possession of a

*Reported in 443 P.2d 815.

dangerous drug (amphetamines), a misdemeanor under the provisions of RCW 69.40.

All appellants were arrested on the same evening at a total of three different locations in the city of Seattle. The convictions obtained in all cases, save that of appellant Wall, were based on evidence seized pursuant to a series of five search warrants (Nos. 0293, 0294, 0295, 0296, and 0297) issued at a single hearing before Justice of the Peace Evangeline Starr on November 5, 1965. The circumstances and conditions giving rise to the issuance of the respective search warrants are outlined and set forth in *State v. Walcott,* 72 Wn.2d 959, 435 P.2d 994 (1968), an appeal from the fruits of search warrant No. 0297. On this appeal we are concerned with search warrants Nos. 0294, 0295, and 0296. Search warrant No. 0293 was nonproductive, in that the party involved was acquitted.

The principal assignment of error common to all appellants is that the search warrants here involved were void in that they were procedurally defective and were issued without adequate showing of probable cause. The basis upon which appellants make this assignment of error are fully outlined and set forth in *State v. Walcott, supra,* and will not be repeated here. We have fully considered this assignment of error as it pertained to search warrant No. 0297 in the *Walcott* case, and since we find no material or significant variation in the procedure or in the circumstances relating to the issuance of search warrants Nos. 0294, 0295, and 0296, or as pertains to the hearings upon the respective motions to suppress the evidence accumulated pursuant to the search warrants, we adhere to our ruling in the *Walcott* case. Accordingly, we find this assignment of error to be without substantial merit.

The remaining assignments of error are made by appellants Coleman, Joyce Chakos, and James Wall. These assignments of error revolve about incidents arising out of the search of the premises located at 2303 N. E. 65th Street, Seattle, Washington, pursuant to search warrant No. 0296. In this respect, appellants Coleman and Joyce Chakos chal-

lenge the sufficiency of the evidence to sustain their convictions. Appellant Coleman urges, in addition, that he was not fully advised of his rights prior to making certain incriminating statements; and appellant Wall asserts the invalidity of a search of his automobile parked in the public street adjacent to the premises. A brief resume of the circumstances surrounding the search, arrest, and conviction of these appellants will assist in an understanding of our disposition of these assignments.

The premises located at 2303 N. E. 65th Street, consist of a 6-room house with a partial basement. The main floor contains a living room, dining room, kitchen, bathroom, and two bedrooms. Some 4 months prior to November 5, 1965, the evening of the search, the premises were rented by the appellants Peter and Joyce Chakos, there being some testimony that Mrs. Chakos negotiated the rental transaction. These appellants thereafter sublet one of the bedrooms to a Mrs. Marjorie Wall, her small daughter, and her friend Robert Ramoy, and the living room to appellant Coleman who occupied it as a bedroom. In addition to the living room, appellant Coleman who was interested in sculpturing, also had access to and use of the basement where he worked and kept his sculpturing materials.

When the officers executed their search warrants at about 9 p.m., November 5, 1965, Mr. and Mrs. Chakos, Mr. Coleman, Mr. Ramoy, a Mr. Al Moss, and Mrs. Wall and her young daughter were present in the house. With the exception of Mr. Moss, who remained in the kitchen with some of the officers, all of the occupants were assembled in the dining room where they were advised by the officers of their constitutional rights and of the basis for and purpose of the search. The ensuing search revealed three growing marijuana plants and some seeds in the basement, a jar of marijuana seeds in the bedroom occupied by Mrs. Wall and Mr. Ramoy, a jar of marijuana seeds and leaves in the living room, a type of amphetamine (methamphetamine) in the kitchen refrigerator and in the living room, the remains of two marijuana cigarettes, one in the living room

and one in the dining room, sundry paraphernalia consisting of hypodermic needles and syringes, a black metal pot, and a pipe in various of the rooms including the living room, and a soot blackened spoon found in appellant Coleman's jacket.

None of the appellants made any incriminating statements during the search, except Mr. Chakos who acknowledged ownership of the marijuana seeds found in Mrs. Wall's bedroom. The next morning, however, appellant Coleman, after again being advised of his rights to counsel and to remain silent, admitted that he used marijuana and methamphetamine, the latter by injection. He also permitted inspection of his arms, which carried numerous puncture marks, some of recent origin.

During the course of the search, appellant James Wall came to the house. The purpose of his visit was to see his estranged wife, Mrs. Wall, and his daughter. When he entered the house, he was advised of the nature and purpose of the search being conducted, searched for weapons, advised of his rights, and asked if his automobile could be searched. Although Mr. Wall denied that permission to search his automobile was requested or granted, four officers testified that he freely gave his consent. The search revealed a packet of marijuana in the vehicle.

Appellant Wall was charged with unlawful possession of marijuana, a felony. Appellants Coleman and Joyce Chakos, together with her husband appellant Peter Chakos, were charged with the same offense as well as unlawful possession of a dangerous drug, a misdemeanor. Appellant Wall was tried before a jury and found guilty as charged. Appellants Coleman and Joyce Chakos waived jury trial and were convicted by the court, sitting without a jury, of the crimes of unlawful possession of a dangerous drug and unlawful possession of marijuana, respectively.

Mrs. Chakos contends the evidence fails to establish that she was in possession of any marijuana. With this contention we disagree. The evidence clearly demonstrates that she, with her husband, was in control of the premises; that

she and her husband let rooms to other tenants; that she participated in cleaning and maintaining the premises; that it was common knowledge among the occupants of the household that narcotics were used and tolerated in the residence; that marijuana in one form or another was present in virtually every room; and that marijuana plants were growing in the basement. Under these circumstances the question of whether Mrs. Chakos knew of and was in actual or constructive possession of marijuana became a question of fact to be decided by the trier of the facts. In our view the evidence amply sustains the trial court's finding of guilt. *State v. Weiss*, 73 Wn.2d 372, 438 P.2d 610 (1968).

Likewise, we find no merit in appellant Coleman's assertion that the evidence fails to sustain his conviction of unlawful possession of a dangerous drug. The evidence reveals that amphetamine (methedrine) crystals were found in the living room occupied as a bedroom by appellant Coleman; that hypodermic paraphernalia was also in the room; that a soot blackened spoon was in his jacket; that he was an admitted user of marijuana and amphetamines, the latter by injection. The evidence further indicated that the usual method of reducing the type of amphetamines (methedrine) found in appellant Coleman's room to liquid form for injection by hypodermic was to place the crystals in a spoon or like container and heat the same over a flame. It would be naive indeed to conclude that appellant Coleman was not in unlawful possession of amphetamines on the evening in question. The trial court's finding of guilt upon this score is fully supported by the evidence. We will not disturb the finding. *State v. Weiss, supra.*

Appellant Coleman next asserts that he was not advised of his constitutional rights prior to making his admission that he was a user of drugs. The evidence refutes this assertion, for the version of events accepted by the trial court indicates that appellant Coleman was fully apprised of his rights on three separate occasions prior to making his admission, and that he voluntarily chose not to exercise

his right to remain silent or to have counsel present. The trial court did not err in receiving appellant Coleman's admission in evidence. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965).

Appellant Wall contends that the marijuana found in his automobile was the product of an unlawful search, in that he did not freely and voluntarily consent to a search of his vehicle. The issue of law and fact raised by appellant Wall in this respect was considered by the trial court in a hearing which was, by stipulation, conducted as if it was a CrR 101.20W hearing on the admissibility of a confession. At this hearing four police officers testified that after appellant Wall was advised of his rights and informed of the reason for the officers' presence on the premises he was asked if his automobile could be searched to which he replied, "Sure, go ahead." Appellant Wall disputed the officers' testimony and produced another witness who testified that the officers did not ask appellant Wall's consent to search his automobile. Furthermore, appellant Wall asserts that if he in any fashion gave his consent the same was the result of coercion.

At the conclusion of the hearing, the trial judge, by oral decision, indicated his belief of the version advanced by the police officers; however, he expressed some doubt as to whether the consent given by appellant Wall was free of coercion. In this respect the trial judge stated:

> Gentlemen, I haven't any doubt but what the police officers, now being widely aware of the requirement that they inform a defendant of his rights, did inform this defendant that he had a right to an attorney and that anything he said might be used against him in a court of law.
>
> Then the testimony goes on, of not one but four police officers, to the effect that he was asked if they could search his car, and that he said, "Sure, go ahead." There was no direct coercion except the fact that when he came in the officers had pounced on him, and, as they say, shook him down to see if he had a weapon on his person, and the fact that he was advised that the officers were searching for narcotics; that his daughter and his wife, who is now living with another man, were in the other room.

If those things are coercion, then, of course, there was some implied coercion here.

. . . .

I would prefer to find here that the defendant was informed of his rights, and that he was asked if the officers might search his car, to which he gave consent, and that the surrounding facts and circumstances at that time do not in law constitute coercion. Then if an appellate court wishes to review this some time, they could apply their own understanding of the law to this state of facts.

. . . .

I think it is a question of whether there is implied coercion, and on that issue, at least for the present time, I find that there was no such implied coercion. The motion to suppress will be accordingly denied.

■ No formal findings of fact or conclusions of law, as required by CrR 101.20W, were thereafter entered on the question of whether appellant Wall did, in fact, consent to the search of his automobile, and whether, if such consent was given, it was truly voluntary and uncoerced as required by the constitution and the cases in this state. *State v. Greco,* 52 Wn.2d 265, 324 P.2d 1086 (1958).

In view of the reservations seemingly held by the trial court with respect to the validity of the disputed consent, and because the trial court had the benefit of the presence of the respective witnesses and perforce would be in the best position to evaluate their testimony, we deem it advisable to remand appellant Wall's case to the trial court for the purpose of entering appropriate and specific findings of fact and conclusions of law upon the consent issue.

The judgments appealed from are, with the exception of the judgment in appellant Wall's case, affirmed.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, HUNTER, HALE, and NEILL, JJ., concur.