# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52205-5-II |
| Respondent, | |
| v. | |
| ANTHONY NGUYEN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Anthony Nguyen appeals his conviction for possession of a controlled substance (methamphetamine). Nguyen argues (1) the trial court's failure to enter findings and conclusions requires reversal and dismissal, (2) there was insufficient evidence to prove he constructively possessed methamphetamine, and (3) a search warrant was invalid. We reject Nguyen's arguments and affirm.

## FACTS

In March 2018, Nguyen began renting out rooms in his home. Nguyen did not choose his tenants well, and quickly began having problems with stolen items and unpaid rent. Nguyen sought assistance from law enforcement who confirmed to Nguyen that several of his tenants were gang members under investigation by the Vancouver Safe Streets Task Force, and suggested that Nguyen work with the police to remove his tenants and protect his property. Several of the persons frequenting Nguyen's home were known to engage in weapons trafficking and drug distribution.

In mid-April, Nguyen was admitted to a hospital for approximately one week. Nguyen was released from the facility and returned to his home on April 21, 2018. Upon his return, Nguyen found that many of his belongings had been stolen and his home was in "[d]isarray." Verbatim Report of Proceedings (VRP) at 143. He ejected eight or nine people who were not his tenants.

On April 23, members of the Vancouver Police Department's Safe Streets Task Force were called to Nguyen's home after reports of a shooting. Nguyen was not a suspect in the shooting and was not at home when the police arrived. When Nguyen arrived at his home, Sergeant Spencer Harris told him he could leave because the search would likely take several hours. Nguyen left while police searched his home.

The initial report stated that the incident was a drive-by shooting, but the task force quickly came to believe that the shooting had occurred from inside the first floor of the home, based on a bullet hole indicating the gun was fired from inside the home. When officers reinterviewed the victim, he admitted that the shot came from inside the home. The officers then sought a warrant, based on an affidavit. The affidavit contained, in part, the following information:

> [W]hen officers gained access to the interior of the residence to conduct a "safety sweep[,"] they found evidence indicating that a firearm had been fired from within the residence as the front door exhibited a bullet hole, the condition of which indicated that the projectile had been fired from within the residence . . .
>
> . . . .
>
> . . . [Victim] stated in summary that he has been living at [Nguyen's home] for the past couple weeks with his cousin . . . . [Victim] primarily sleeps on the couch. [Victim] woke up this afternoon to several of his friends inside the residence . . . . Also present inside the residence was a Hispanic male only known to [victim] as [suspect]. [Victim] left the residence and walked down the street

2

where he met with his girlfriend at Taco Bell. A short time later [victim] walked back to his residence. [Victim] walked into the residence from the front door. [Suspect] was standing across the room from a distance of about ten feet. Immediately upon entering the residence, while still standing near the front door, [victim] was shot one time in his left arm by [suspect]. [Victim] stated that the shooting was unprovoked and there were no words exchanged prior to the shooting. [Victim] did not see the gun in [suspect's] hand prior to the shooting but noticed [suspect] was pointing at him as he walked through the front door. [Suspect] ran out the back door of the residence prior to police arriving.

Clerk's Papers (CP) at 36-37. The warrant authorized officers to search Nguyen's entire home, described as a "two-story private residence," including all rooms and containers, for evidence of the crime of first degree assault, to include firearms, bullet casings, bullet fragments, "trace evidence," and articles of personal property "to establish the identities of persons in control of or occupying the premises," and photographs. CP at 39-41.

The only full bathroom in the home was located on the second floor. Sergeant Harris searched the bathroom, including a glass bowl on the vanity filled with assorted items. It was later determined that some of the items in the bowl belonged to Nguyen, such as a bracelet and a USB (Universal Serial Bus) drive, and others, including another bracelet and necklace, did not. When Sergeant Harris looked through the items in the glass bowl, he found a small, transparent baggie containing what he suspected was methamphetamine. Also on the vanity were Nguyen's prescriptions and paperwork from his recent hospitalization. After finding the suspected methamphetamine, Sergeant Harris approached Nguyen, who was waiting outside, and asked him whether he used methamphetamine. Nguyen said no, and asked if the officers had found some. When Sergeant Harris stated that he had, Nguyen asked, "[I]n a glass bowl?" VRP at 108.

3

The substance in the baggie tested positive for methamphetamine, and Nguyen was charged with possession of a controlled substance. At trial, Nguyen challenged the validity of the search warrant and filed a motion to suppress all evidence obtained during the April 23 search. The trial court held CrR 3.5 and CrR 3.6 hearings to determine if the evidence should be suppressed and if Nguyen's statements to Sergeant Harris would be admissible. The trial court ruled the warrant was valid and, consequently, that the evidence was admissible. The trial court also ruled that Nguyen's statements were admissible.[1]

At the bench trial on this matter, police officers testified as described above. Nguyen also testified, disputing that Sergeant Harris had asked him if he used methamphetamine and denying that he had ever seen the baggie of methamphetamine prior to seeing the picture of it at trial. In making its oral ruling, the trial court stated that Sergeant Harris's description of his conversation with Nguyen was more credible. The trial court acknowledged that the controlled substance may have been put in the bowl by "one of these multiple ne'er-do-wells who showed up and trashed his place," but found that Nguyen was at least aware there was "some crystal substance" in the glass bowl by the time he spoke with Sergeant Harris on April 23. VRP at 179.

The trial court found Nguyen guilty of possession of a controlled substance and sentenced him to 61 days in confinement. Although the trial court entered findings of fact and conclusions of law for the CrR 3.5 and CrR 3.6 hearings, the court initially failed to enter findings and conclusions relating to Nguyen's bench trial and conviction. After Nguyen filed his initial brief, the trial court subsequently entered findings of fact and conclusions of law. Those findings of fact that are relevant to the issues in Nguyen's appeal are as follows:

---

[1] Nguyen does not contest the admissibility of his statements on appeal.

1.  Anthony Nguyen lived at [the subject residence] in Vancouver, Clark County, State of Washington on April 23, 2018.

. . . .

8.  Pursuant to [a] search warrant, Sergeant Spencer Harris of the Vancouver Police Department searched the upstairs bathroom of the residence and found a baggie of suspected methamphetamine sitting in a glass bowl.

9.  Police found hospital discharge paperwork and prescriptions addressed to Anthony Nguyen dated April 19, 2018 and April 20, 2018 inside a brown paper sack next to the glass bowl that contained the baggie of suspected methamphetamine.

10. Anthony Nguyen admitted to police that he used that bathroom for the 48 hours prior to the search warrant's execution.

11. Anthony Nguyen had knowledge of the prescriptions inside the brown paper sack which was located next to the glass bowl that contained the baggie of suspected methamphetamine.

12.  Anthony Nguyen admitted that a black and green bracelet and a USB device located inside the glass bowl which contained the suspected methamphetamine belonged to him.

13. Anthony Nguyen regularly used the bathroom where the suspected methamphetamine was found.

14. Sergeant Harris informed Anthony Nguyen that he found suspected methamphetamine in his bathroom and Anthony Nguyen replied "in a glass bowl?"

15. Sergeant Harris took the suspected methamphetamine into evidence.

16. The suspected methamphetamine was taken to the Washington State crime lab and tested by forensic scientist Rosa Carreno. Ms. Carreno confirmed the substance was methamphetamine.

17. The substance found by police in the glass bowl in Anthony Nguyen's residence was methamphetamine.

CP at 117-18. The trial court entered the following conclusions of law:

1. All of the above facts have been proven by the State beyond a reasonable doubt.

2. Anthony Nguyen had dominion and control over his residence, located at [the subject residence] Vancouver, Clark County, State of Washington, on April 23, 2018.

3. Anthony Nguyen did not have physical possession of the methamphetamine at the time of the execution of the search warrant.

4. Anthony Nguyen exercised dominion and control over the glass bowl located in the bathroom of his residence.

5. Anthony Nguyen had dominion and control over the methamphetamine that was inside the glass bowl.

6. Anthony Nguyen knew there was methamphetamine in the glass bowl.

7. Anthony Nguyen unlawfully possessed a controlled substance, methamphetamine, on April 23, 2018.

8. Anthony Nguyen is guilty of the crime of unlawful possession of a controlled substance as charged in the information.

Suppl. CP at 118-19.  Nguyen appeals his conviction.

## ANALYSIS

### I. TRIAL COURT'S FAILURE TO ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW IS MOOT

Nguyen argues that the trial court erred by failing to enter findings of fact and conclusions of law after the conclusion of the bench trial.  The State concedes that the trial court was required to enter written findings of fact and conclusions of law, but argues that because the trial court entered written findings and conclusions on July 31, 2019, the issue is moot.  We agree with the State.

CrR 6.1(d) requires trial courts to enter written findings of fact and conclusions of law following a bench trial.  Generally, if a trial court fails to enter written findings and conclusions

6

of law, the remedy is for an appellate court to remand the case back to the trial court for entry of such findings, rather than reversal of conviction. *State v. Head*, 136 Wn.2d 619, 624, 964 P.2d 1187 (1998).

Here, in his initial brief, Nguyen argues that because his brief was filed before the trial court drafted its findings, the trial court could possibly tailor its findings to address the issues raised in his brief, which could be prejudicial to him. Nguyen did not renew this argument in his reply brief, which was filed several weeks after the trial court entered its written findings of fact and conclusions of law. Because Nguyen has not challenged the findings and because there is no evidence that the findings were tailored, we hold that the issue is moot.

## II. SUFFICIENCY OF THE EVIDENCE

Nguyen argues that the State presented insufficient evidence to convict him of possession of a controlled substance. We hold that the State presented sufficient evidence of Nguyen's constructive possession of the methamphetamine, and we affirm the trial court.

We review sufficiency of evidence claims by asking whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 210 (2014). A claim of insufficiency admits the truth of the State's evidence, and all inferences that can be reasonably drawn therefrom. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014). Circumstantial and direct evidence are considered equally reliable by a reviewing court when determining the sufficiency of the evidence. *State v. Delmarter*, 94 Wn. 2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on questions concerning witness credibility, conflicting testimony, and persuasiveness of the evidence. *Andy*, 182 Wn.2d at 303.

Following a bench trial, we determine whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). Substantial evidence is evidence that would convince a fair-minded person of the truth of the fact that is being asserted. *Stevenson*, 128 Wn. App. at 193. We treat both unchallenged findings of fact and findings of fact supported by substantial evidence as verities on appeal. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 169, 795 P.2d 1143 (1990). Because the trial court delayed entry of its findings of facts and conclusions of law, and although Nguyen failed to directly challenge those findings of facts and conclusions of law even when he filed his subsequent reply after having the benefit of the trial court's eventual findings and conclusions, we nonetheless address his arguments on their merits.

A. *Substantial Evidence Supporting the Findings of Fact Connecting Nguyen to the Seized Methamphetamine*

Nguyen argues that "[t]here was no evidence presented to connect Mr. Nguyen to the seized methamphetamine, other than his ownership of the home." Brief of Appellant at 13. The trial court made several findings of fact that connect Nguyen to the seized methamphetamine, not including his ownership of the home. The question raised by Nguyen's argument is whether these findings of fact are supported by substantial evidence. We hold that they are. We review those findings below.

1. *Finding of Fact 9*

Finding of fact 9 states:

> Police found hospital discharge paperwork and prescriptions addressed to Anthony Nguyen dated April 19, 2018 and April 20, 2018 inside of a brown paper sack next to the glass bowl that contained the baggie of suspected methamphetamine.

CP at 118.

At trial, Sergeant Harris testified that he found medical paperwork and prescriptions attributable to Nguyen near the suspected methamphetamine. Harris testified that those prescriptions were dated April 19, 2018 and April 20, 2018. Nguyen testified that he knowingly placed the brown sack that contained those prescriptions next to the glass bowl. Substantial evidence supports Finding of fact 9.

2. *Finding of Fact 10*

Finding of fact 10 states:

> Anthony Nguyen admitted to police that he used that bathroom for the 48 hours prior to the search warrant's execution.

CP at 118.

Nguyen testified at trial that he had been in the home during the two days prior to his arrest, and that he had occupied and used the bathroom during that time. Substantial evidence supports Finding of fact 10.

3. *Finding of Fact 11*

Finding of fact 11 states:

> Anthony Nguyen had knowledge of the prescriptions inside the brown sack which was located next to the glass bowl that contained the baggie of suspected methamphetamine.

CP at 118

Nguyen testified at trial that he had placed the brown sack containing prescription drugs next to the glass bowl that contained the suspected methamphetamine, and that he had knowledge of contents of the bag because they were his own prescriptions that he had recently filled. Substantial evidence supports Finding of Fact 11.

4. *Finding of Fact 12*

Finding of fact 12 states:

> Anthony Nguyen admitted that a black and green bracelet and a USB device located inside the glass bowl which contained the suspected methamphetamine belonged to him.

CP at 118

At trial, when shown a picture of the glass bowl in the bathroom and its surrounding items, Nguyen testified that he owned a black and green item and a USB device depicted in the photograph that were located in close proximity to the suspected methamphetamine. Substantial evidence supports Finding of Fact 12.

5. *Finding of Fact 13*

Finding of fact 13 states:

> Anthony Nguyen regularly used the bathroom where the suspected methamphetamine was found.

CP at 118.

Nguyen testified at trial that the bathroom where the suspected methamphetamine was found was his bathroom that he regularly used and regularly cleaned. Substantial evidence supports Finding of fact 13.

6. *Finding of Fact 14*

Finding of fact 14 states:

> Sergeant Harris informed Anthony Nguyen that he found suspected methamphetamine in his bathroom and Anthony Nguyen replied, "in a glass bowl?"

CP at 118.

Sergeant Harris testified at trial that when he told Nguyen about the suspected methamphetamine that he had found in the bathroom Nguyen replied, "in a glass bowl?" VRP at 108. Substantial evidence supports Finding of Fact 14.

2. *Findings of Fact Connecting Nguyen to the Seized Methamphetamine Supporting the Conclusion of Law that Nguyen Had Dominion and Control over the Seized Methamphetamine*

To convict Nguyen of unlawful possession of a controlled substance, the State was required to prove beyond a reasonable doubt that he possessed a controlled substance without a valid prescription. RCW 69.50.4013(1), (2). Possession can be actual or constructive. *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). Actual possession requires either direct physical control or physical custody of the item in question. *State v. Cantabrana*, 83 Wn. App. 204, 206, 921 P.2d 572 (1996). Constructive possession occurs when the possessor exercises dominion and control over an item. *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (plurality opinion). Constructive possession is established by viewing the totality of the circumstances, including the proximity of the property and ownership of the premises where the item was found. *Davis*, 182 Wn.2d at 234. Mere proximity to the item is insufficient to prove constructive possession. *Davis*, 182 Wn.2d at 234. Knowledge of the presence of contraband, without more, is insufficient to prove constructive possession. *State v. Hystad*, 36 Wn. App. 42, 49, 671 P.2d 793 (1983). And although it is not a crime to have dominion and control over premises where contraband is located, dominion and control over the premises does establish a rebuttable presumption of dominion and control over the contraband. *State v. Summers*, 107 Wn. App. 373, 389, 28 P.3d 780 (2001); *State v. Tadeo-Mares*, 86 Wn. App. 813, 816, 939 P.2d 220 (1997.

11

Both parties point to cases to argue that the totality of the circumstances here supports their position. Nguyen relies on *State v. Turner* 103 Wn. App. 515, 518, 13 P.3d 234 (2000), and *State v. Callahan*, 77 Wn. 2d 27, 29-30, 459 P.2d 400 (1969). In *Turner*, law enforcement seized a gun in plain view in Turner's car. 103 Wn. App. at 518. We held that Turner was in constructive possession of the gun because he owned the car, had driven the car most of the day with the gun in plain view, and knew he was transporting the firearm. 103 Wn. App. At 524. In *Callahan*, law enforcement discovered Callahan in close proximity to a cigar box containing a controlled substance. 77 Wn. 2d at 29-30. We held there was insufficient evidence to prove Callahan was in constructive possession of drugs where the only evidence was that Callahan, the controlled substance, guns, and a set of broken scales were located on a houseboat that Callahan did not own, and where Callahan had stayed overnight on the houseboat and admitted to handling the drugs momentarily. 77 Wn.2d at 28-31.

The State cites *State v. Chakos*, 74 Wn.2d 154, 443 P.2d 815 (1968). In *Chakos*, our Supreme Court found that a defendant who sublet areas of a home had constructive possession of a controlled substance found in common areas, despite the defendant's argument that she was unaware of the presence of the controlled substance. 74 Wn.2d at 160. The defendant, who cleaned and maintained the residence, "was in control of the premises," which had marijuana "in one form or another" in virtually every room. *Chakos*, 74 Wn.2d at 157.

Here, all residents of the home had access to the shared upstairs bathroom, but Nguyen like the defendants in *Chakos* and *Turner*, was the owner of the home. Upon Nguyen's return from the hospital, two days before the shooting and subsequent search, Nguyen ejected eight or nine people from his home, exercising control. And, unlike in *Callahan*, the controlled

substance was discovered in the same container as Nguyen's personal property, beside his recent hospital discharge papers and prescriptions. When questioned by Sergeant Harris, Nguyen knew that the officers had discovered the methamphetamine in the glass bowl, indicating that he was aware of its presence. Considering the totality of the circumstances, and viewing the evidence in the light most favorable to the State, we hold that the State presented sufficient evidence to support the findings of fact that establish Nguyen had constructive possession of the controlled substance.

Nguyen also assigns error to the trial court's determination that he did not unwittingly possess the controlled substance. Nguyen does not further elaborate on this argument in his brief, but we observe that the trial court resolved the conflicting testimony of whether Nguyen knew of the controlled substances' presence in the glass bowl against Nguyen, finding that Sergeant Harris's version of his conversation with Nguyen was more credible. As stated above, we defer to the trier of fact on questions concerning witness credibility, conflicting testimony, and persuasiveness of the evidence. *Andy*, 182 Wn.2d at 303. The reasonable inference that Nguyen had knowledge of the presence of the methamphetamine in the bathroom can be drawn from Nguyen's statement "in a glass bowl?" CP at 18.

Viewing all evidence and all reasonable inferences in favor of the State, we hold that the State presented sufficient evidence to support the trial court's conclusion of law that Nguyen was guilty of possession of a controlled substance and affirm the trial court.

### III. THE SEARCH WARRANT WAS VALID

Nguyen argues that the trial court erred when it denied his motion to suppress evidence found in his home. Nguyen argues that the search warrant was not supported by probable cause

13

and was overbroad because there was an insufficient nexus between the items sought and Nguyen's upstairs bathroom. We disagree.

We review a trial court's assessment of probable cause de novo. *State v. Chamberlin*, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007). Search warrants must be supported by probable cause. *State v. Neth*, 165 Wn.2d 177, 183, 196 P.3d 658 (2008). "Probable cause requires more than suspicion or conjecture, but it does not require certainty." *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). We evaluate the existence of probable cause on a case-by-case basis. *State v. Thein*, 138 Wn.2d 133, 149, 977 P.2d 582 (1999).

Probable cause exists if the affidavit supporting the warrant establishes "a reasonable inference that a person is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." *State v. Martines*, 184 Wn.2d 83, 90, 355 P.3d 1111 (2015). Affidavits are to be read as a whole, in a common sense way, with any doubts resolved in favor of validity of the warrant. *State v. Griffith*, 129 Wn. App. 482, 487, 120 P.3d 610 (2005). The affidavit must establish "a nexus between criminal activity and the item to be seized and between that item and the place to be searched." *Neth*, 165 Wn.2d at 183. A nexus must be established by specific facts. *Thein*, 138 Wn.2d at 145. A description of the place to be searched and items to be seized is sufficient if it is as specific as the nature of the activity under investigation permits. *State v. Jackson*, 150 Wn.2d 251, 268-69, 76 P.3d 217 (2003).

Here, to determine if the trial court erred in concluding probable cause supported the search warrant for Nguyen's home, we examine whether the search warrant affidavit established a nexus between criminal activity, the items to be seized, and Nguyen's home. *Neth*, 165 Wn.2d

14

at 183. We consider only the information that was available to the issuing judge. *State v. Olson*, 73 Wn. App. 348, 354, 869 P.2d 110 (1994).

A.      *There Was a Nexus between Criminal Activity and the Items To Be Seized*

The search warrant affidavit stated that an individual, who had been residing in Nguyen's home, was shot just inside the front door of the home by someone at least tangentially known to the victim, and that the suspected shooter "ran out the back door" of the home prior to the police arriving. CP at 37. The search warrant authorized law enforcement officers to seize items including firearms, bullet casings and fragments, trace evidence, and personal property to establish identity of individuals in the premises. Based on the facts set forth in the affidavit, there was a connection between criminal activity, Nguyen's home, and items to be seized. Accordingly, we hold that the warrant described a sufficient nexus between the criminal activity and the items to be seized.

B.      *There Was a Nexus between the Items Seized and Nguyen's Upstairs Bathroom*

Nguyen also argues that there was no nexus between the items sought and the second floor of his home. In support of his argument, Nguyen relies on *State v. Keodora*, 191 Wn. App. 305, 364 P.3d 777 (2015). In *Keodora*, the defendant was convicted of first degree murder based on evidence found on his cell phone. 191 Wn. App. at 311. Police seized Keodora's cell phone after apprehending him for an unrelated crime, and obtained a warrant to search his phone based on general suspicions that gang members use their phones "to take and store photos of illegal activity." 191 Wn. App. At 308. Division One of this court found the search warrant to be overbroad because it allowed a search for "items that had no association with any criminal activity and for which there was no probable cause whatsoever." 191 Wn. App. at 316. This

15

case can easily be distinguished from *Keodora*, as here the search warrant was obtained to search a single residence for evidence concerning a specific crime, not a phone for general gang related activity.

Here, it is undisputed that the shooting victim had been living at Nguyen's house for two weeks. The search warrant affidavit established that the shooter had been in the house at the time the shot was fired. The shooter, who was at least tangentially known to the victim, "ran out the back door of the residence" sometime before police were called. CP at 37. Based on the affidavit, the search warrant authorized the officers to search "all rooms" in Nguyen's home for firearms, bullet casings and fragments, "trace evidence," and personal property to establish identity of individuals in the premises. CP at 39.

The facts of the affidavit supported a search of Nguyen's entire house, including the upstairs bathroom. Evidence of a shooting may not be confined to the room in a home where the shooting occurred, and the upstairs bathroom was used by everyone in the home. We hold that there was a sufficient nexus between the items to be seized and Nguyen's upstairs bathroom.

Because the facts in the affidavit sufficiently established a nexus between the criminal activity and the items to be seized, and between the items to be seized and the upstairs bathroom, the warrant was supported by probable cause and not overbroad. Because the warrant was supported by probable cause, we hold that the trial court did not err in ruling that the search warrant was valid. Accordingly, we hold that the trial court properly denied Nguyen's motion to suppress evidence of a controlled substance.

No. 52205-5-II

## CONCLUSION

In sum, Nguyen's argument that the trial court's failure to enter findings and conclusions requires reversal and dismissal is moot. We hold that there was sufficient evidence to support the findings of fact and that the findings of fact support the conclusions of law. Nguyen's argument that a search warrant was invalid fails because the warrant was supported by probable cause and sufficient nexus exists between the items sought and Nguyen's upstairs bathroom. We affirm Nguyen's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, C.J.

Sutton, J.

17